## DOBSON v. COTHRAN.

1. ABDUCTION—EVIDENCE OF CHARACTER.—In action to recover damages for the abduction of plaintiff's female child and causing her to be debauched, allegations that plaintiff and such child and other members of his family were of dissolute character, would not seem to be suffi-

cient, if true, to operate as a bar to the action, but may be proved, under the general denial, as bearing upon the truth of the charge and in mitigation of damages.

2. EVIDENCE OF AGE.—Testimony by a father and mother of the age of their child is the best evidence of that fact. Entries of birth in the family Bible are only secondary evidence.

3. EVIDENCE—RELEVANCY—IMMATERIAL ERROR.—Plaintiff was asked what his child said to him when he found her in defendant's bawdy house. On objection, this question was ruled out, but the child herself was permitted, when on the stand, to testify as to what she then said, and other witnesses, in contradiction, also testified to the same matter. *Held*, that there was no ground to sustain this exception, as the question was properly ruled out, and as the matter was fully testified to by other witnesses.

4. EVIDENCE—RELEVANCY.—This child was asked whether she had not told her father when she was discovered, that she would not leave the bawdy-house until she was paid what she had made there. *Held*, that there was no error in excluding this question, as it was irrelevant to the issues, and as she was then intoxicated and excited, and had testified that she had no recollection of seeing her father on that occasion.

5. EVIDENCE.—Evidence of what this child had declared to be her father's motive in instituting this action was incompetent.

6. AN EXCEPTION based upon an occurrence during the trial which the Case does not so disclose, cannot be sustained.

7. EVIDENCE—CONDUCT OF TRIAL.—A refusal by the trial judge to permit further testimony during the progress of the argument, is not appealable.

8. GENERAL EXCEPTION.—An exception that "the judge's charge clearly indicated to the jury his opinion on the facts of the case," is too general to require consideration.

9. EXCEPTIONS—APPEAL RECORD.—An exception based upon the assumption that there were separate defences by the several defendants cannot be sustained, where this court is furnished with a copy of only one answer.

10. ABDUCTION—RETENTION BY FORCE.—If defendant did nothing to induce the plaintiff's child to come to defendant's house of ill-fame to live a life of shame, but used force to keep her there, plaintiff could maintain his action for damages.

11. GENERAL EXCEPTIONS, alleging no specific errors, will not be considered.

12. EXCESSIVE DAMAGES in a case tried by a jury are not within the jurisdiction of this court.

Before IZLAR, J., Greenville, August, 1890.

This was an action by William A. Dobson against Elizabeth Cothran and others, to recover damages for the abduction and debauchery of Susie Dobson, a child of plaintiff, aged twelve years. The action was commenced April 5, 1889. The judge charged the jury as follows:

This action is brought by the plaintiff against the defendants to recover damages for the abduction of a female child of twelve years of age, the daughter of the plaintiff, and for procuring said child to be debauched. The complaint alleges that the defendants are women of notoriously bad character and ill-repute, and are engaged in the business of keeping and occupying a house of ill-fame in the city of Greenville, in this State, and that on or about the thirty-first of March, 1889, the defendants did maliciously, wrongfully, and unlawfully, by messages, allurements, promises, and inducements, prevail upon Susie Dobson, the female child of the plaintiff, of tender years, to be enticed and abducted from the presence, home, care, control, and protection of the plaintiff, for bad, wicked, and unlawful purposes; and harbored and concealed said child, and refused to give her up to the plaintiff. And that while the said child was in the wrongful keeping of the defendants, and while being unlawfully harbored by them, to wit, from March 31st, 1889, to April 1st, 1889, they caused, persuaded, and influenced the said child to be drugged, debauched, deflowered, and ravished, and to commit fornication or adultery, and to be otherwise injured by some man or men unknown to the plaintiff, who at the time aforesaid were patronizing their wicked establishment. And by reason of the wicked, malicious, wrongful, and unlawful conduct of the defendants towards said infant child, the plaintiff was deprived of the services of his child, was outraged and aggrieved in his feelings, and endured great mental anguish and suffering, and has thereby been injured ten thousand dollars.

The defendants answer separately, but substantially the same. They say that they have no knowledge or information sufficient to form a belief whether the plaintiff is the father of Susie Dobson, an infant female child of the age of twelve years, and was reared by him, and has always lived with him and been in his service, and under his care, protection, and control, as alleged in

the first paragraph of his complaint, and deny all the other allegations of the complaint.

Now, that is the case that is presented for your consideration. You are to decide this case according to the testimony that you have heard on the stand and the law as I shall give it to you. The facts are for you, and you will have to pass upon them. I cannot aid you in regard to the facts, but will only state to you the law as I understand it. It is incumbent upon the plaintiff, of course, to establish the allegations in the complaint by the preponderance of the evidence. In this court you have to decide according to the preponderance of the evidence, and not be satisfied beyond a reasonable doubt as in the Court of General Sessions. This action, as I understand, is brought, not for seduction. This could not be. But the allegation is that these defendants procured and persuaded this child to commit adultery or fornication. This, as I understand, is not the gist of the present action, but only intended to show the aggravation of the injury to the plaintiff. As has been very properly said, an action could not be maintained against a female for seducing a female child. But, as I understand this case, it is for abduction; that is, for persuading away a child for bad, wicked, and unlawful purposes, and that, after that was done, by their promises and persuasions, the female child was debauched and deflowered. It is not for seduction.

Now, I charge you that where several persons unite in an act which constitutes a wrong to another, they intending at the time to commit such wrong, the reasonable and just rule of the law compels each of the parties to bear the misconduct of all. The law does not require the party injured to point out how much of the injury was done by the one and how much was done by another, or what share of responsibility is fairly attributable to each, as between themselves, and leave it to the jury to apportion the responsibility among them according to the mischief done by each. If this was the rule, it would be a practical denial of justice in many cases. But all concerned in the injury are to be treated as constituting one party, by reason of their joint co operation, and all are liable to respond in a gross sum as damages. The law permits the party injured to proceed against any

one of the joint wrong-doers, or any number less than the whole, and to enforce his remedy regardless of the participation of the others. For while the wrong is joint, it is in contemplation of law several. And there cannot be any apportionment of responsibility, whether the action be against one or against all. Each is responsible for the whole, and the degree of blamableness as between herself and her associates is wholly immaterial when the action of all contributes to the result. I charge you that it is unimportant to the party injured that one contributed much and another little; the one least guilty is as much liable as the one most guilty, all having aided in accomplishing the result.

The facts alleged in the complaint set forth a good cause of action. A father can maintain an action for the abduction of his daughter who is under twenty-one years of age. The father has such property in his infant child as will enable him to maintain an action for injury done him, by depriving him of the society of his child and defeating the education of his child, &c. The true ground of the action, as I understand the law, is not so much the loss of the services of the child, but the outrage and deprivation, the injury the father sustains in the loss of his child, the insult offered his feelings, the agony in the destruction of his hopes concerning his child, and the irreparable loss of that comfort and society which may be the only solace of his declining years. And I hold that this action is maintainable, although the evidence does not show a forcible taking or abduction. An infant child is not able to consent, and the law therefore implies force, as the taking is unlawful. As a general rule, in cases of abduction of this kind, even if no actual force be shown, yet the action may be maintained. The child may be under the age of consent. I mean at that age when the child is not able to consent to going away from the parent's home, as was said in a case of this kind where the child was under twelve years, the mere fact of the taking away being unlawful, would imply force, and would be sufficient to maintain this action, That is all that I have to say in regard to the nature of this action and the law governing that part of the case.

The most serious part of this case for your consideration is the part with reference to damages, and all I would say is that if

the defendants enticed or persuaded Susie Dobson to leave the home of her father and enter upon a life of shame and disgrace, in the bawdy house of the defendants, the mere fact that Susie Dobson had had sexual intercourse with other men before she went, would not be a defence against the action brought by the father for the injury of taking his child away, but such fact would have weight in fixing the amount of damages sustained by the father. If these defendants enticed and persuaded Susie Dobson to leave and remain away from her father, even after she got to the house, and to hide in the wardrobe in order to keep her from being found by the father, this would be an unlawful act, and it would be sufficient to maintain this action, and would amount to sufficient force, even if the defendants did not persuade her by promises or entice her to leave her father's house. If they did persuade her to pursue this life of shame after she went to their house of ill-fame, and when her father came for her she was hid by them in the wardrobe, I think there would be sufficient force in that to maintain the action.

Now, in an action of this kind, I charge you that in case you come to the conclusion that the plaintiff is entitled to recover, you will have to consider the question of damages before you can make up your verdict. If you come to the conclusion that the plaintiff is not entitled to recover, you will not consider the question of damages. But if you come to the conclusion that the plaintiff is entitled to recover anything, I charge you that he is entitled to recover such damages as will compensate him for taking away his child to this place of ill-fame and procuring her to be debauched (if you come to the conclusion that that was so), and that she was induced to have sexual intercourse with men; these are all matters which would come in in aggregation of the damages which the plaintiff is entitled to recover; and if you think he is entitled to recover anything, you can give him a verdict for any amount from one cent up to ten thousand dollars.

But in considering these damages, you will consider Susie Dobson's character before she went there, whether she was a virtuous girl, whether she was properly raised up; because if she was a pure, innocent, and virtuous little girl before she went there, and she was enticed away from home and carried to this

house of ill-fame, it would be a very different thing from a girl who had been improperly brought up and who had previously lost her virtue. You will consider all that in making up your verdict, if you find for the plaintiff. You will consider whether or not she was brought up properly, and whether the father countenanced such things in his family. You are to consider all of these questions in making up your verdict.

And I charge you that acts of this kind before this should have more weight with you than acts committed afterwards. All testimony as to the character and conduct of Susie Dobson, and as to the action of the father in countenancing improper conduct of his daughters, should be considered in determining the question of damages. But subsequent acts of the child, Susie Dobson, are not entitled to as much weight as her previous conduct; for if she had lived a pure and virtuous life up to the time of the alleged abduction, her subsequent conduct might have been influenced by reason of the fact that she had lost her virtue and become reckless as to her subsequent conduct. Now, that is my idea of the rule as to damages by which you should be governed in making up your verdict.

I charge you further: A great many questions were propounded to this little girl as to her course of life previous to her going to this house of Bettie Cothran's, and as to her intercourse with men, which she answered in the negative, stating that they were not so. Witnesses were afterwards put upon the stand to prove the contrary. That does not make the statements and acts about which she was asked, in order to contradict her, evidence. It only affects her credibility; it weakens the force of her testimony, but it does not make it evidence. But where she has voluntarily confessed it, or it was testified to by other witnesses, or where acts have been proved by other witnesses which would lead you to the conclusion that she had done so, why, of course, that is evidence. There was a witness who testified that she made the remark in the house of Bettie Cothran that she had made money by having intercourse with men. And then it was testified to that she had remained at the house of other people with men. That is all for you to consider, and I only want to call your attention to this other matter; for where the questions were put

to her and she was contradicted, I charge you that that is not testimony. It only goes to weaken her testimony.

I trust you will find no difficulty in coming to a conclusion in this case. I have tried to explain the law to you as I understand it. If you come to the conclusion that this child was enticed and persuaded away by Bettie Cothran, and she was persuaded afterwards by promises or force to have sexual intercourse with men, I say, if you come to that conclusion, the plaintiff would be entitled to a verdict. It may be for any amount from one cent up to ten thousand dollars. And if you find for the plaintiff, your verdict will be for so many dollars, writing it out in words, not in figures. And if you come to the conclusion that she was not persuaded to go there, or that she was not by promises and persuasion induced to remain and have sexual intercourse with men, the plaintiff would not be entitled to recover a verdict, and you would say, "We find for the defendants." Take the record.

The jury returned a verdict in said case against the defendants for one thousand dollars, which was duly entered up on the 18th of August, 1890.

The defendant, Elizabeth Cothran, appealed on the following grounds:

1. Because his honor struck out the last eight paragraphs of the answer. 2. There being a family Bible in the court house having the record of the age of Susie Dobson, it should have been submitted instead of parol testimony. 3. Because the judge ruled as incompetent the question asked the plaintiff, W. Dobson, "Didn't Sue tell you all the way home, when Mr. Cooksey was with you, that she was going back to that house, or somewhere else, that she was not going to stay at home?" 4. Because the judge ruled out the question asked the plaintiff, "Didn't she (referring to Susie Dobson) tell you that she had stayed with men before she went to Bettie Cothran's?" 5. Because the judge ruled out this question: "Didn't she (Susie Dobson) say at the house before you started to go, that she was not going before she got her money there that she had made in the car box?" 6. Because the judge ruled out the following question propounded to Susie Dobson: "That night when you were taken

out of the wardrobe, didn't you tell your father that you were not going home until you had got your money you had made there?" 7. Because the judge ruled out the following question propounded to Susie Dobson: "At Mrs. Fletcher's at this same conversation, didn't you say to her, in speaking about this Dobson case, that your father said he had spent a heap of money at Bettie Cothran's, and that now he was going to try to get some of it back?" And when the witness, Mrs. Fletcher, was put on the stand to contradict Susie Dobson, the judge ruled the question out. 8. Plaintiff's counsel, during the closing argument, having exhibited to the jury the Dobson family Bible and stated that the age was there recorded, the judge should have either directed the jury that they must not consider that fact, or granted defendant's motion to submit the Bible to the court and jury, that they might see that the date of Susie Dobson's birth had been changed therein. 9. Because the judge's charge clearly indicated to the jury his opinion on the facts of the case. 10. Because the judge in his charge led the jury to believe that they must find for or against all of the defendants, when there were separate defences. 11. Because the judge erred in charging the jury that even if the defendants did not persuade her by promises or entice her to leave her father's house, if they did persuade her to pursue this life of shame after she went to their house of ill-fame and after her father came for her, she was hid by them in that wardrobe, I think there would be sufficient force in that to maintain this action. 12. Because the finding of the jury was contrary to the clear preponderance of the testimony. 13. Because the testimony being clear, both from witnesses and admission of Susie Dobson, that she was a girl of bad character and without virtue before she went to defendants, the verdict of the jury was outrageous and excessive, and a new trial should be granted. 14. Because the testimony being clear and conclusive, that the plaintiff himself visited this house of defendant frequently; that his oldest daughter was an inmate thereof for three years, and was guilty of adultery in his own house with his full knowledge, a verdict for $1,000 for plaintiff under that state of facts was most erroneous and unjust, and should be set aside.

*Messrs. James 1. Earle* and *Wells & Orr*, for appellant.

*Mr. W. A. Williams*, contra.

September 28, 1891.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiff brings this action to recover damages from the defendants, who are alleged to be keepers of a bawdy house, for enticing and abducting from the home of her parents, Susie Dobson, an infant child of plaintiff, of the age of twelve years, and causing her to be debauched in the said bawdy house.   The allegations of the complaint are so fully and clearly set forth in the charge of his honor, Judge Iz-lar, which for this and other reasons should be incorporated in the report of this case, as to supersede the necessity for anything more than the general statement which we have made as to the nature of the action.

The defendants filed separate answers, only one of which—that of the appellant, Elizabeth Cothran—is set out in the "Case," from which we infer that the answers of the other two defendants were of the same general character; at all events, there is nothing in the "Case" to indicate that the defendants relied upon different defences.   The first defence set up in appellant's answer amounts simply to a general denial of all the material allegations of the complaint.   For a second defence she alleges: 1st. That another and older daughter of plaintiff was for a period of three years, and up to a short time before the alleged abduction of the said Susie Dobson, with the knowledge and consent of plaintiff, an inmate of said bawdy house, and that during the whole of that period the said Susie was a frequent visitor there, with the consent and approval of plaintiff.   2nd. That during the whole of said period the plaintiff and his wife, the mother of Susie, frequently visited said house for improper and immoral purposes. 3rd. That another sister of Susie, with the knowledge of plaintiff, and without objection from him, made application to be allowed to become an inmate of said house and was refused.   4th. That the said Susie Dobson is and has been for a year last past, a person of "loose character."   5th. That the said elder sister

of Susie is now living in plaintiff's house, receiving without objection from him, "the promiscuous and indiscriminate visits of men for improper purposes." 6th. That the appellant has not the control and management of the house referred to in the complaint, "but only the use and ooccupation of two rooms therein." 7th. That at the time of the alleged occurrences mentioned in the complaint, the appellant was sick in bed, and had nothing to do with said occurrences, if any such took place. 8th. That all the females of plaintiff's immediate family are persons of bad character for chastity.

When the case was called for trial, counsel for plaintiff interposed an oral demurrer to the second defence set up in appellant's answer, which was sustained, and defendants excepted.

All the testimony is set out in the "Case," and it is manifestly very conflicting as to many material matters of fact. The jury, however, rendered a verdict against all of the defendants for one thousand dollars, and judgment being entered thereon, the defendant, Elizabeth Cothran, alone appeals upon the several grounds set out in the record.

The first ground questions the correctness of the ruling sustaining the demurrer to the second defence, whereby the eight paragraphs of that defence, stated substantially above, were stricken out. The ground upon which the Circuit Judge sustained the demurrer is not stated in the "Case," though we infer from what subsequently occurred, that his honor was of opinion that the allegations contained in those eight paragraphs did not amount to such a defence as would, if true, constitute a bar to the action, but were more properly circumstances in aid of the general denial, or in mitigation of damages; for we find that much testimony—indeed, all that was offered—tending to show the truth of such allegations was received during the progress of the trial. So that even if there was technical error in the ruling complained of, the defendants sustained no damage thereby, as they obtained all the benefit which they could have derived, if these allegations in the answer had not been stricken out.

We are not prepared to admit, however, that there was even technical error in the ruling, for the fact that the plaintiff and

every member of his family had been persons of bad character and loose habits, in respect to chastity, would not constitute a defence to an action of this kind, no more than the fact that a female upon whom a rape has been committed is a person of dissolute character, would constitute a defence to an indictment for the rape. It would be no bar to an action of this kind to show that the girl whom defendants are charged with having enticed from the paternal roof and induced to become an inmate of a den of infamy was not a person of chastity, and that her domestic surroundings were not favorable to the cultivation of that virtue. That would not justify the act of defendants in inducing her to enter a bawdy house, where her previous bad habits would be intensified and fixed. It is very true that such allegations as are contained in the second defence set up in the answer, if established, would tend to shake confidence in the charge upon which the action was based, and aid materially the first defence under the general denial, and would also have an important bearing upon the question of damages. But, as we have said, the record shows that the defendants were allowed the full benefit to which they were entitled in these respects by being permitted to offer such testimony as they desired, tending to show the bad habits of the plaintiff and other members of his family.

The second ground of appeal is in these words : "There being a family Bible in the court house, having the record of the age of Susie Dobson, it should have been submitted instead of parol testimony." This ground is based upon the unfounded assumption that the entry in a family Bible is the best evidence of the age of a person the date of whose birth is there entered. Such evidence, however, is in fact secondary, and is only permitted where better evidence cannot be obtained. It is really nothing more than the written declaration of the person who made the entry, and is admissible in cases of pedigree as an exception to the general rule upon the subject. But it is useless for us to pursue the inquiry, as the question has been distinctly decided in this State in the case of *Taylor* ads. *Hawkins* (1 McCord, 164), where it was held that the entry in a family Bible of the date of a person's birth was not the best evidence of the age of such person, but that it might be proved by a person

who testified from mere recollection of the fact and time of the birth of the person whose age was in question. In delivering the opinion of the court, Colcock, J., used this language: "In this case the witness may have proved the age of the defendant (although such entry existed) from mere recollection of the fact of his birth. In short, it is the very best evidence which the nature of the case admits. If no other evidence could have been had, the memorandum, upon proof of the handwriting, may have been admitted." The same doctrine is recognized in *Robinson* v. *Blakeley* (4 Rich., 596); and in *Wilson* v. *A. & C. A. Ry Co.* (16 S. C., 587), the general proposition, which would conclude the question under consideration, is laid down, that entries in a book need not be produced to prove a fact within witness' own knowledge. It was therefore clearly competent for the plaintiff to prove the age of his own daughter by his own testimony as to the date of her birth, as well as by the testimony of the child's mother to the same effect, and there was no error in refusing to require the production of the entry in the family Bible.

The third, fourth, and fifth exceptions impute error to the Circuit Judge in refusing to allow certain questions to be put to plaintiff, as to what his daughter said after she had been found in the bawdy house and was being carried home by her father. Susie Dobson not being a party to this action, her declarations, under the general rule, would be incompetent. She could have been, and was in fact, examined as a witness, and there was therefore no occasion for asking another witness what she had said. But more than this, when she was on the stand as a witness, she was asked what she said to her father as well in the house as on her way home, and subsequently witnesses were examined for the purpose of contradicting her, and thus the defendants had before the jury all the facts which they complain were excluded. So that in no point of view can these exceptions be sustained.

The sixth exception imputes error in ruling out the following question propounded to Susie Dobson while on the stand as a witness: "That night when you were taken out of the wardrobe, didn't you tell your father that you were not going home until you had got your money you had made

there?" What relevancy such a question had to the issue which the jury were called upon to determine, it is somewhat difficult to say; but in view of the undisputed testimony that Susie Dobson was very much intoxicated and quite excited when taken out of the wardrobe, and in view of the further fact that she had testified that she had no recollection whatever of having seen her father on that occasion, we cannot say that there was any error in excluding the question.

The seventh exception complains of error in excluding testimony as to what Susie Dobson was supposed to have told Mrs. Fletcher she heard her father say was his motive for bringing this action. This question was so plainly incompetent, as an effort to elicit declarations of persons not parties to the case, that we need not say more.

The eighth exception is in the following words: "Plaintiff's counsel, during the closing argument, having exhibited to the jury the Dobson family Bible, and stated that the age was there recorded, the judge should have either directed the jury that they must not consider that fact, or granted defendants' motion to submit the Bible to the court and jury, that they might see that the date of Susie Dobson's birth had been changed therein." This exception, if for no other reason, cannot be sustained, because it does not correctly represent the occurrence upon which it is based. The "Case," by which alone are we to be governed, shows that "during the argument" one of defendants' counsel "stated to the jury that no family Bible showing the age of Susie had been produced or offered in evidence," and that one of the counsel for plaintiff in reply "stated that the judge had not ruled that it was necessary to produce a family Bible to prove age; that there was nothing in the evidence to show that any record was made by either the father or mother of Susie Dobson; that the family Bible was in court and could have been produced if the judge had ruled it was necessary. The Bible was not exhibited to the jury, but was taken out of the desk drawer by Mr. Ansel at the request of Mr. Williams (both of whom were counsel for plaintiff) and was laid on the desk. It was then taken up by Mr. Orr (one of the counsel for defendants) who stated, in the presence and hearing of the jury, that the date

had been altered, and he then asked the consent of Mr. Williams that the Bible be shown to the jury. Mr. Williams objected, saying the judge had ruled it out. Mr. Orr then asked that the Bible be shown to the court and jury," which was objected to and the objection was sustained. But even if we take the representation as made in the exception to be correct, we do not see any foundation for the exception. All this occurred while the argument was in progress, and after the testimony on both sides had been closed, and the rule is well settled that a motion to receive further testimony at that stage of the case is addressed to the discretion of the Circuit Judge, with which this court will rarely interfere (*Kairson* v. *Puckhaber*, 14 S. C., 627; *State* v. *Clyburn*, 16 *Id.*, 375, and the cases there cited), especially where, as in this case, we think his discretion was properly exercised.

The ninth exception: "Because the judge's charge clearly indicated to the jury his opinion on the facts of the case," is too general in its terms to require consideration at our hands, as it contains no specification of any instance in which the constitutional provision is supposed to have been violated. But we may add that it seems to us that the charge is singularly free from any such exception.

The tenth exception is based upon the assumption, for which we find no support in the "Case," that the defendants pleaded separate defences, and cannot therefore be sustained. But even were it otherwise, we see nothing in the charge which would warrant the assertion that the judge "led the jury to believe that they must find for or against all of the defendants." On the contrary, we think he correctly laid down the law as to what facts would implicate one or more of the defendants, and left it to the jury to determine whether such facts were established.

The eleventh exception complains of error "in charging the jury that even if the defendants did not persuade her by promises or entice her to leave' her father's house, if they did persuade her to pursue this life of shame after she went to their house of ill-fame and after her father came for her, she was hid by them in that wardrobe, I think there would be

sufficient force in that to maintain this action." The cases of *Kirkpatrick* v. *Lockhart* (2 Brev., 276) and *Vaughan* v. *Rhodes* (2 McCord, 227), cited by counsel for respondent, are sufficient to vindicate the instruction complained of.

The twelfth exception, "Because the finding of the jury was contrary to the clear preponderance of the testimony," has been so often ruled to be insufficient as to require no further notice.

The thirteenth and fourteenth exceptions, based upon the allegation that the damages found by the jury are excessive, it is well settled cannot be considered by this court. *Steele* v. *C. C. & A. R. R. Co.*, 11 S. C., 589; *Petrie* v. *Railroad Company*, 29 S. C., 303.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.