## Reed v. Rich.

1. *Torts—Principal—When Bound—Ratification.*—In order that a principal may be bound, a tort (*e. g.* a trespass) must, at the time when committed, have been intended to be done on behalf, and for the benefit of the principal, or, as it is sometimes expressed, in the name of and avowedly for the benefit of the principal.

2. *Torts—Ratification and Adoption.*—An action will lie against every person who has ratified and adopted an act of imprisonment, effected or ordered by his servant or agent, for his use and benefit, although the imprisonment was effected, in the first instant, without his knowledge.

3. *Trespass—Ratification.*—A person who agrees to a trespass after it is committed, is, in law, not a trespasser, unless the trespass was done for his use or for his benefit, and then the agreement, subsequently made, amounts to a precedent command.

4. *Torts—Subsequent Approval of a Wrong Act.*—The approval of a wrongful act, already committed, is no subject of punishment. Subsequent approval of a trespass will not affect a third person, unless the acts were done in his name and for his use. If the trespass was done for his use or benefit, or if he is not in a situation to have intended the act, then his subsequent assent does not make him a trespasser.

5. Where the owner of certain lands is benefited in common with other owners of adjoining lands by the wrongful construction of a ditch, such construction will not create a liability against such owner, where there is no pretense that the ditch was constructed by his direction, or at his request, or for his benefit.

6. *Ratification—What Is, and What Is Not.*—Where a ditch, which benefited a number of land owners in common, was wrongfully constructed, and the person who constructed the same did so without the knowledge of one of the land owners so benefited, and afterward. called upon said land owner, upon two different occasions, and asked for money for digging the ditch, and was refused, and more than a year afterward, called the third time upon such owner for money, and was given five dollars, *it was held* that this act of the land owner, in the entire absence of any knowledge upon his part of the intended digging of the ditch, and where it was not done in his name, or for his benefit, was not such a ratification of the act of digging the ditch as would create a liability on the part of said land owner for the damage done by the ditch.

7. *Evidence—Acts Having no Reference to the Subject-matter of the Suit, Inadmissible.*—On the trial of an action based upon the wrongful opening of a ditch, it is not error to exclude evidence of matter which has no reference to the subject-matter of the complaint in the declaration, but has reference only to some contemplated act in the future.

8. *Evidence—Refusal to Admit Competent Evidence Not Necessarily Reversible Error.*—The refusal to admit evidence which is competent, where the same matter has been proven by other witnesses, without objection, and is substantially before the jury, is not, necessarily, error, for which judgment should be reversed.

9. *Erroneous Instructions Not Always Reversible Error.*—Where a verdict is clearly in accordance with the evidence in the case, and it is apparent that justice has not been affected by the giving of an erroneous instruction, such error will not require a reversal of the judgment.

Memorandum.—Trespass for wrongfully cutting a ditch. Appeal from a judgment rendered by the Circuit Court of Union County; the Hon. Joseph P. Roberts, Judge, presiding. Heard in this court at the August term, A. D. 1892, and affirmed. Opinion filed September 8, 1893.

The opinion of the court states the case.

Appellant's Brief, Leek, Dodd & Karraker, Attorneys.

The evidence in this case shows that Scaggs dug the ditch to drain the land of Rich and others, and that the ditch did drain Rich's land, and that in February, 1888, he paid Scaggs five dollars for the work.

Cooley on Torts, 127, lays down the law as stated by Chief Justice Tindall, as follows: That an act for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him, is the known and well established rule of law. See 6 Wait's Actions and Defenses, 48–49, Sec. 9.

When a person does a thing for another without previous engagement or authority from the other, it becomes the act of the latter, if ratified by him, and he will be responsible for all the consequences which follow, to the same extent that he would have been if the act had been done by his express direction. 2 Addison on Torts, Wood's Ed., Sec. 833; Grund v. Van Vleck, 69 Ill. 478; Pardridge v. Brady, 7 Brad. 639; Arasmith v. Temple, 11 Brad. 39.

A. N. Sessions and Green & Gilbert, attorneys for appellee.

OPINION OF THE COURT, PHILLIPS, P. J.

Appellant, plaintiff, was the owner of certain lands in Union County, and appellee, the defendant, owned other lands, the natural level of which was higher than the lands of plaintiff.   Between the lands of plaintiff and the lands of the defendant there was a natural ridge composed largely of sand and gravel.   On the lower ground, not far from plaintiff's land, was a lake known as Kimball Lake, which was on the west side of the ridge, and on the east side of the ridge are a series of several lakes connected with each other and containing a considerable quantity of water.   The level of the water on the west side of the ridge, as testified by witnesses, is from eight to twelve feet above the level of the water in Kimball Lake.   In 1887, one Scaggs cut a ditch through the farm of one Goodman, across the ridge, about two feet wide and two or three feet deep, through which the water commenced to flow, and soon wore out a channel that practically drained all of the water from the east side of this ridge into Kimball Lake, which caused Kimball Lake to overflow its shores and flooded plaintiff's land.   There were numerous land owners on the east side of the ridge whose lands were drained and greatly benefited by reason of the cutting of said ditch, and a large body of land owned by defendant was greatly benefited by reason of the construction of such ditch. Plaintiff's land being so flooded by reason of the construction of the ditch, he brought his action against defendant for damages, and on trial a verdict and judgment for defendant was entered and the plaintiff brings the record to this court and assigns numerous errors.

There is no evidence in this record to show that the defendant had anything to do with the cutting of the ditch, or any knowledge, unless from mere rumor, that some men were contemplating the opening of the ditch, and plaintiff's case proceeds on the theory of the liability of the defendant, because of an alleged ratification of the act.   " In order that a principal may be bound, the tort, *e. g.* trespass, must, at the time when A committed it, have been intended to be done on behalf and for the benefit of B, or, as it is some-

times expressed, in the name and avowedly in behalf of B."

". He that reviseth a trespasser, and agreeth to a trespass after it is done, or for his benefit, then his agreement subsequent amounteth to a precedent commandment." (Dicey on Parties of Action.)

It is said in Addison on Torts, Sec. 833: "An action will lie. against every person who has ratified and adopted an act of imprisonment, effected or ordered by his servant, or agent, for his use and benefit, although the imprisonment was effected, in the first instance, without his knowledge. But he that agreeth to a trespass after it be done, is no trespasser, unless the trespass was done to his use or for his benefit, and then his agreement subsequent amounteth to a commandment. An imprisonment of a person liable to a railway company, having paid his fare, is an act for the benefit of the company, which may be ratified for the benefit of the company."

In Grund et al. v. Van Vleck, 69 Ill. 478, where the action was for trespass, and the claim against two of the defendants was that they had ratified the act, it was held: " There is no pretense that they were concerned in the commission of the alleged wrongful acts. The only claim for their liability is that they approved and sanctioned acts after they had been done. The approval of a wrongful act already committed is no subject of punishment. Subsequent approval of a trespass will not affect a third person unless the acts were originally done in his name or for his use." To make the subsequent ratification equivalent to a precedent commandment the act of trespass must have been committed in the name and avowedly on behalf of the party subsequently ratifying it. If the trespass was not done for his use or benefit, or he is not in the situation to have originally commanded the act, then his subsequent assent does not make him a trespasser. Wilson v. Barker, 4 Brad. 616; Nicholl v. Glennis, M. & S. 592.

There being many different land owners owning lands that were benefited by the construction of this ditch, any of whom may have planned it, the fact that the lands of

this defendant were benefited by its construction would not create a liability against him, and there is no pretense in the evidence that it was done by his direction or at his request. On the contrary, it appears that he was unacquainted with the man who did the work and had no knowledge of his purpose of so doing, and there is nothing in the evidence to show that it was done in his name or done for his benefit.

The evidence further shows that the men who dug the ditch did not know the defendant until some time after the ditch was dug, and his first connection with it, so far as this evidence is concerned, was when the man Scaggs came to him and said on two different occasions, that he had dug that ditch and asked defendant to give him some money, which was refused by the defendant, and more than a year after the digging of the ditch, the third time Scaggs approached the defendant, asked him if he would not give him some money, claiming that other land owners had done so, and the defendant handed him $5. It can not be said that this act of the defendant, in the entire absence of any knowledge upon his part of the intended digging of the ditch, and where it was not done in his name or for his benefit, was a ratification of the act that would create a liability, and the evidence clearly warranted the jury in finding the defendant not guilty, although the digging of the ditch was prejudicial to the plaintiff and in violation of his right. It is further insisted that the court erred in excluding the evidence of Charles Corzino. Charles Corzino testified that he knew defendant and saw him last fall. He spoke of the Goodman ditch and that he was going to have it opened; that he had money and would spend it or have the ditch opened. The motion was made by counsel for the defendant to strike out testimony of Charles Corzino, as not relevant to the case, which motion was sustained. The action in this case is for the injury committed by opening this ditch in 1887 or 1888, and the time of which the witness, Charles Corzino, was speaking as having conversation with defendant was in the fall of 1891, and could not have had refer-

Reed v. Rich.

ence to the subject-matter of the complaint in plaintiff's declaration, but only reference to some contemplated act in the future; therefore it was not error to exclude this evidence.

It is urged further that the court erred in refusing to admit proper evidence offered by plaintiff. Plaintiff called and had sworn William Kratzinger and offered to prove by him that William C. Rich, Sr., was foreman of the grand jury at the March term of the Circuit Court of Union County, A. D. 1889, and that in the jury room, while the jury was in session, Wm. C. Rich, Sr., said in the presence of William Kratzinger and other jurors, concerning the investigation for the unlawful cutting of the Goodman ditch, and the destruction of the public road, that "there is nothing in it. That that ditch was cut by parties chipping in, and that he (Rich) was one of the parties who chipped in." Whereupon witness declined to answer for the reason that the matter was a privileged question, and counsel for defendant also objected.

The court sustained the objection, to which the plaintiff excepted. We are of the opinion that this evidence was admissible, but the same evidence substantially, was before the jury by the testimony of Geo. W. Curzino, who testified without objection, to substantially the same facts that were proposed to be proved by Kratzinger, and who was one of the grand jurors, and who testified that what Rich said was something like this : "that he did not think it worth while to take the trouble to look after that thing as it would not amount to anything, and he did not think there could be anything made out of it against Bob Goodman for the digging of the ditch, for it was a chipped-in arrangement, and he chipped with the balance; that I think was about the words." That the exclusion of the evidence offered was not error for which this judgment should be reversed. It is urged that the court erred in modifying instructions asked by plaintiff. We have carefully examined this record and there is nothing in the record to show wherein the modification was made, nor can it from the

record be determined that the court inserted any clause in
any instruction.

It is insisted that the court erred in refusing plaintiff's
ninth instruction, which was on the theory that if Scaggs
cut the ditch for the purpose of benefiting the lands of the
defendant and other persons in the vicinity of the ditch, by
turning the surface and other waters from said land, and
that Rich afterward paid him money for the digging of the
same, and that in such case said conduct of the defendant
in paying him money would be ratification by defendant of
the act of Scaggs in digging the ditch, and make him liable
therefor to the same extent as if he originally authorized
Scaggs to dig the ditch, there being no connection what-
ever between Scaggs and defendant before the digging of
the ditch, and there being other persons in the vicinity of
the ditch whose lands would be benefited alike with the
land of the defendant by the act of Scaggs, if some other
land owner induced Scaggs to act, or he was acting for him-
self in digging the ditch, however beneficiary to the defend-
ant such digging might be, it would not make him liable, and
he can not be said to have ratified the act by the mere fact
that on the frequent solicitations of Scaggs, with whom he
had no previous connection, he thereafter gave him $5.
That it was not error to refuse the ninth instruction in the
form it was asked.

It is insisted there was error in giving the twelfth
thirteenth, fourteenth, fifteenth and sixteenth instructions
for the defendant. The twelfth instruction was that un-
less the jury should believe that the defendant caused the
ditch to be dug or that it was dug avowedly in his interest
and behalf, they should find the defendant not guilty. The
thirteenth instruction stated that even though the defend-
ant might have been incidentally benefited by the digging
of the ditch, that fact would not of itself show ratification.
Unless the ditch was dug in the interest of defendant or by
his instigation, he could not be found guilty on any evidence
appearing in this record. It was not error to give the
twelfth instruction nor was the fact of his being incident-

ally benefited, evidence to show ratification of the act of Scaggs.   It was not error to give the thirteenth instruction.   The fourteenth and fifteenth instructions given for the defendant were erroneous in taking away from the jury the right to find a ratification, and making the case depend on whether the defendant advised and encouraged the digging of the ditch.   The verdict, however, was clearly in accordance with the evidence in this case, and justice has not been affected by the error in instructions.   The error in giving the fourteenth and fifteenth instructions should not require a reversal of this judgment.   Strohm v. Hayes, 79 Ill. 41; Murray et al. v. Haverty et al., 70 Ill. 319; Caveny v. Weiller, 90 Ill. 158.

The verdict of the jury under the evidence could not have been different from what it was.   There is no sufficient ground for a reversal in this record.   The judgment is affirmed.