ANNIE EICKHOFF, Respondent, v. THE SEDALIA, WARSAW & SOUTHWESTERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 16, 1904.

1. **PARENT AND CHILD: Stepchildren: Loco Parentis.** If a stepfather takes his stepchildren into his family and so holds them out to the world, he stands *in loco parentis*, and incurs the same liability with respect to them that he is under to his own children.

2. ———: **Action for Child's Injury: Statute: Common Law.** An action to recover the loss of services of a minor son by reason of his injury is an action at common law and not under the statute.

3. ———: **Stepson: Action for Loss of Services: Party.** A stepfather having assumed the relation of father to his wife's minor son is entitled to the proceeds of his labor and he, and not the mother, must sue for the loss of his services.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

REVERSED.

*William S. Shirk* for appellant.

(1)   The court below erred in refusing to give defendant's ninth instruction asked.   The evidence leaves little room to doubt but that the relation of master and servant did not exist between plaintiff and her son at the time the injury occurred.   In fact the son's evidence shows clearly that such relation did not exist.   And yet the court by refusing the defendant's ninth instruction, refused to submit this question to the jury.   This was error.   Schmitz v. Railway, 46 Mo. App. 396; Mauerman v. Railway, 41 Mo. App. 348.   The court erred in not sustaining defendant's demurrer to the plaintiff's case at the close of her evidence, and to the whole case at the close of all the evidence.   The evidence as to gross contributory negligence was uncontradicted and undisputed and there is no evidence whatever that the engineer saw the plaintiff's son in a position of danger, in time to avoid striking him.   In fact the evidence tends strongly to show to the contrary.   For the fireman says that as the engine went through the bridge he saw some section hands along side of the track—they were all on the right-of-way, outside of the track, when he last noticed them.   The evidence also shows beyond dispute that the engineer sounded the alarm whistle, and there is not a particle of evidence to show that he did not do this, the moment he discovered Schumacher in danger. In the absence of such evidence the case should not have been permitted to go to the jury.   Tanner v. Railway, 161 Mo. 497; Guyer v. Railway, 73 S. W. 584; Sharp v. Railway, 161 Mo. 214; Harris v. Railway, 40 Mo. App. 255; Carrier v. Railway, 74 S. W. 1002.   We might burden  our brief with a long list of cases to the same

effect, but the legal proposition is so plain and familiar, that it is wholly unnecessary. We respectfully submit that the judgment should be reversed.

*James T. Montgomery* and *Charles E. Yeater* for respondent.

Plaintiff's fifth instruction correctly defines the law and the plaintiff under the law was entitled to the services of her son until his majority. The case of Sharpe v. Biscuit Co., 75 S. W. 289, citing Hennessy v. Brewing Ass'n, 145 Mo. 104, settles this question beyond dispute.

BROADDUS, J.—The plaintiff sues to recover for loss of services of her minor son, John Schumacher, who, it is alleged, was injured by the negligence of defendant while in its employ. There was a trial before a jury and verdict for the plaintiff.

Many interesting questions are raised by the respective counsel in the case. But as it is denied, and we think properly, that any cause of action existed in the plaintiff, it will not be necessary to notice them.

The said John Schumacher was the son of plaintiff by a former husband, deceased, and the plaintiff bacame the wife of one Joseph Eickhoff, some eight years before the injury complained of. Both plaintiff and her son testified that after said marriage said Eickhoff took the said son into his house and treated him as a member of his family. On this point the son testified as follows: "I couldn't tell you how long my mother has been married to my stepfather, eight or nine years, something like that. After my mother married Mr. Eickhoff I was taken right into Mr. Eickhoff's family; he had been married before and had children, and Mr. Eickhoff took my mother's youngest children into his family and took the place of a father to me." The mother's langua~? was: "When I married Mr. Eickhoff I had six children

. . . John Schumacher is twenty-one years old to-day. He was twelve when I married Mr. Eickhoff. Mr. Eickhoff had some children, too. He took my children into his family and treated them as his own. We mixed them all together and just treated them as one family.''

It seems that afterwards the said minor was permitted to hire out for wages which he generally collected himself. Of his wages he gave his mother a part and retained the residue. On one occasion the stepfather collected his wages and handed it to his wife. The mother testified that she clothed her son from the proceeds of her own labor which she earned in the way of keeping boarders. The evidence shows beyond dispute that upon the marriage of plaintiff to Eickhoff the latter assumed towards the son the relation of a father by taking him into his family and treating him as such, and was liable for necessaries for his support. And the subsequent acts of the son in hiring out for wages and the fact that the mother furnished him his clothes did not alter the relation that had been created. It is no unusual occurrence in the country for mothers to furnish clothes for their children and for fathers to permit sons to retain the proceeds of their own labor.

The law is stated thus: '' There is no obligation on the part of the stepfather to provide for the children by his wife by a former husband, by virtue merely of his marriage with their mother. He may refuse to provide for them, and could not be compelled to do so. The liability in such cases depends upon the relation he chooses to assume in reference to them. If he holds them out to the world as members of his family, he stands *in loco parentis* and incurs the same liability with respect to them that he is under to his own children. And the presumption in such cases is, that they deal with each other as parent and child, not as master and servant. This relation being established the reciprocal rights, duties and obligations pertaining to it arises be-

tween them the same as if he was their natural father.'' Academy v. Bobb, 52 Mo. 357. In this case the court reviewed the authorities, both English and American, with the conclusion announced, and its correctness has not since been questioned.

The case of Hennessy v. Bavarian Brewing Co., 145 Mo. 104, cited to the contrary, recognizes the rule stated. It is true the court therein, where the minor's death was caused by the wrongful act of the defendant, held the cause of action vested in the natural parents of the deceased because the statute so provided. The distinction is that this is not a statutory but a common law action and as such is governed by the common law.

It therefore follows that at common law the stepfather having assumed the relation of father to the minor, he, and not the mother, was entitled to the proceeds of the son's labor.

The defendant's demurrer to plaintiff's evidence should have been sustained. Reversed. All concur.