[No. 11180.   Department One.   October 4, 1913.]

LIZZIE MAGNUSON, *Respondent*, v. EDWARD J. O'DEA *et al.*,
*Appellants.*[1]

PARENT AND CHILD—KIDNAPING—ACTION FOR DAMAGES — PERSONS
LIABLE—INSTRUCTIONS.   In an action for damages for kidnaping a
child, brought against several defendants, one of whom it was ad-
mitted took no part in the kidnaping and did not know the where-
abouts of the child, it is proper to instruct that there could be no
liability upon him unless he participated by some act or deed in
harboring and concealing the child and that mere knowledge on his
part that some one had kidnaped her imposed no duty upon him
to conduct an inquiry for the purpose of ascertaining the guilty
parties.

RELIGIOUS SOCIETIES—TORTS — LIABILITY OF BISHOP — EVIDENCE—
SUFFICIENCY.   The bishop of a Catholic diocese is not liable in dam-
ages for the torts of his subordinates, a rector and the sisters in
charge of a school, who kidnaped a child, where his control was
only over their spiritual welfare and not the temporal affairs of
either, and it merely appeared from the evidence that plaintiff called
on him and failed to obtain an audience, that he heard of the
child's disappearance, and the rector, in answer to inquiry made,
informed him that he did not know anything concerning her; since
the minister of a church or head officer of a fraternal society is not
responsible for the torts of his brethren unless participated in or
ratified and affirmed.

PARENT AND CHILD—CUSTODY—ACTION FOR KIDNAPING—PARTIES—
ABANDONED CHILD.   A divorced husband and father is not a neces-
sary party plaintiff in an action for kidnaping a child, where the
wife had remarried and the child had been for several years sup-
ported in the family of the stepfather, in whose custody she was;
the inference being that the father had abandoned the child.

PARENT AND CHILD—CUSTODY—KIDNAPING—ACTION FOR DAMAGES
—PARTIES—STEPFATHER.   The stepfather is a necessary party plain-
tiff in an action for kidnaping a child who had been received into
his home and was supported by him; since the stepfather was in duty
bound to support the child, and the action is founded on loss of
services.

HUSBAND AND WIFE—ACTION FOR MALICIOUS PROSECUTION—PARTIES.
A second husband is a necessary party plaintiff in an action for
malicious prosecution brought by his wife, in view of Rem. & Bal.

[1]Reported in 135 Pac. 640.

Code, § 182, relating to actions which arise out of an injury to the character of the wife.

PARENT AND CHILD—CUSTODY—KIDNAPING—DAMAGES—MITIGATION —MORAL CHARACTER OF MOTHER. In an action by a mother for damages for kidnaping of a child, the moral character of the plaintiff is not an issue and evidence to establish immorality is inadmissible to mitigate the damages.

SAME—DAMAGES—EXCESSIVE DAMAGES—NEW TRIAL. In an action for kidnaping a minor child, whose whereabouts was concealed from February 7th to September 11th following, during which time she was kept in a Catholic school, the plaintiff expending $3,000 to find her daughter and regain her custody, a verdict for $19,033, is so grossly excessive as to conclusively establish passion and prejudice, requiring a new trial; as the damages can be compensatory only.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered December 14, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*George Donworth* and *Farrell, Kane & Stratton*, for appellant O'Dea.

*Gordon & Easterday* and *Blackburn & Gielens*, for appellants Van Goethem *et al.*

*Frank H. Kelley*, for respondent.

GOSE, J.—This is an action for damages upon three causes of action. In the first cause of action, it is alleged that the defendants other than the defendant O'Dea kidnaped the plaintiff's daughter, Marjory Rieman, who was then over sixteen years of age and under eighteen years of age. The second cause of action is, in legal effect, a charge of malicious prosecution on the part of the defendants other than O'Dea, in instituting and prosecuting a proceeding in the juvenile court at San Francisco. The third cause of action charges the institution and prosecution of a like suit at the city of Tacoma. In each of these suits it was charged that the plaintiff was an immoral woman and unfit to be entrusted with the custody of her daughter. The case was dismissed

as to the defendant corporations and Edward J. O'Dea as bishop of the diocese of Seattle, and retained as to him and all the other defendants in their private capacities. There was a verdict against all the remaining defendants on the first cause of action for $19,033, and against all the defendants except Edward J. O'Dea on the second and third causes of action for $1,500 and $2,500 respectively. The verdicts were made effective by a judgment, from which all the defendants have appealed.

We will first consider the appeal of the defendant Edward J. O'Dea. It is admitted that he took no part in the kidnaping and that he did not know the whereabouts of Marjory. The court instructed the jury, in effect, that there was no liability upon him unless he participated by "some act or deed" in harboring and concealing her, and that mere knowledge on his part that someone had kidnaped her imposed no duty upon him to conduct an inquiry for the purpose of ascertaining who the guilty parties were. We think the law was correctly given. 38 Cyc. 485, 486; *Adams v. Freeman,* 9 Johns. 117; *Reed v. Rich,* 49 Ill. App. 262; *Wamsganz v. Wolff,* 86 Mo. App. 205.

It is argued, however, that he, as bishop of the diocese, owed a duty to the respondent which he failed to discharge, and that because of that failure she was deprived of the custody of her daughter for a period of about eight months. There is nothing in the record which reaches the stature of evidence which tends to show that he owed any duty to the mother. The daughter had been attending a Catholic academy in the city of Tacoma conducted by the Sisters of Visitation. His codefendants were, respectively, the sisters in charge of the school, the rector of St. Leo's Church in Tacoma, and Louis I. Lefebvre, a lawyer by profession. The respondent took her daughter from the school to Seattle on the 7th day of February, 1911; and during the evening the daughter absented herself and returned to the rectory at Tacoma, and the rector took her to the home of the appellant

Lefebvre where she remained until February 17th, when the rector took her to Portland, Oregon, where she remained in a Catholic academy until about the 27th day of June. He then took her to San Francisco and again placed her in a Catholic academy, where she remained until some time in September, when she was restored to her mother. The record shows that the bishop had authority over the spiritual welfare of the sisters and the rector, but that he had no control over the temporal affairs of either. The respondent called three several times at the home of the bishop and sought, but failed to obtain, an audience. When the bishop heard of the disappearance of the child, he asked the rector of St. Leo's Church, who was also the chaplain of the school, if he knew anything concerning her, and was informed that he did not. As against this evidence, we have only the opinion of the respondent that it was the duty of the bishop, (1) to assume that his coappellants knew the whereabouts of the child; (2) to coerce a confession from some one of the guilty parties; and (3) to require them to restore the child to the respondent. The law devolved no such duty upon him. He has committed no legal wrong, and the sins of others cannot be visited upon him. He occupies the same position as would the minister in charge of any other church or the head officer of a fraternal society. Such officials are not responsible for the torts of their brethren unless participated in or ratified and approved by them. 38 Cyc. 485-6. The court erred in denying his motion for a directed verdict and for a judgment *non obstante*.

The record shows that the respondent was divorced from the father of Marjory; that he was living at the time of the trial; that, after her divorce, the respondent married Pontius Magnuson; that she was living with him at the time of the abduction and at the time of the trial and that Marjory had been a member of the family from the time of this marriage. The remaining appellants, upon these facts insist: (a) that

Marjory's father is a necessary party plaintiff in the first cause of action; and (b) that, if this view be rejected, the stepfather is a necessary party plaintiff in all the causes of action.

The first contention is without merit. The respondent and the stepfather had had the custody and control of the child for several years and had supported her. While the record does not disclose in whose custody she was placed at the time of the divorce, the inference is clear that the father had abandoned her.

In *Anderson v. Aupperle*, 51 Ore. 556, 95 Pac. 330, the grandmother had the custody of a minor granddaughter whose mother was dead and whose father had abandoned her. It was held that the grandmother stood in *loco parentis* and could sue for damages arising from the seduction of the grandchild. In *Yost v. Grand Trunk R. Co.*, 163 Mich. 564, 128 N. W. 784, 31 L. R. A. (N. S.) 519, it was held that where a father had abandoned his minor son, the mother could sue for the loss of his services caused by the negligence of the defendant.

The stepfather is a necessary party plaintiff in all the causes of action. Rem. & Bal. Code, §§ 181, 182 (P. C. 81 §§ 11, 13); Rem. & Bal. Code, § 5932 (P. C. 95 § 7); *White v. McDowell*, 74 Wash. 44, 132 Pac. 734; 29 Cyc. 1669, 1670; *Eickhoff v. Sedalia W. & S. W. R. Co.*, 106 Mo. App. 541, 80 S. W. 966. In *White v. McDowell*, we held that "there is a duty upon a stepfather to support the minor children of his wife by a former husband, and that this duty is something more than mere charity."

The right of action in cases like this is bottomed upon the loss of services, but the parents may also recover damages for mental distress and the loss of the companionship of the child. *Washburn v. Abrams*, 122 Ky. 53, 90 S. W. 997. It follows, we think, that, where the stepfather has received the child into his home and has supported her, he is entitled to the services and earnings of the child. In short, when he

assumes the duties of a parent, the corresponding benefits follow and the rights of the mother and stepfather in respect to the child are then equal before the law (Rem. & Bal. Code, § 5932 [P. C. 95 §7]) and the stepfather must join in any action waged by the mother to recover for loss of services.

The stepfather was also a necessary party in the second and third causes of action, as they arise out of an injury to the character of the wife. Rem. & Bal. Code, § 182 (P. C. 81 § 13). The facts of the case differentiate it from *Clark v. Northern Pac. R. Co.*, 29 Wash. 139, 69 Pac. 636, 59 L. R. A. 508; and *McGill v. McGill*, 67 Wash. 303, 121 Pac. 469, cited by the respondent. Neither of these cases present the question as to whether a second husband is a necessary party plaintiff in an action of this nature.

The court instructed the jury to disregard the evidence touching the moral character of the respondent in rendering a verdict upon the first cause of action. This is assigned as error. Her moral character was not in issue on the question of damages arising from the abduction of her minor child. Every parent, whatever his or her moral life may be, is entitled to the custody and control of the minor children unless and until that custody has been taken away by a court of competent jurisdiction, or unless the child is over sixteen years of age and voluntarily consents to a transfer of his or her custody to another. Jones, Evidence (2d ed.), § 148; *Stewart v. Watson*, 133 Mo. App. 44, 112 S. W. 762; *Houston Elec. Co. v. Jones* (Tex. Civ. App.), 129 S. W. 863; *Volker v. State ex rel. Creamer*, 177 Ind. 159, 97 N. E. 422.

The case of *Dobson v. Cothran*, 34 S. C. 518, 13 S. E. 679, supports the contention of the appellants that evidence tending to establish the immorality of the parent is admissible, not as a defense to the action, but in mitigation of the damages. We are not convinced of the soundness of this rule. It seems to us to inject a false issue into a case where the parent seeks redress for the abduction of his child. It necessarily assumes that the parental love of an immoral parent may be

less than that of a moral one. This may or may not be true, and its truth or falsity is purely speculative.

The charge is as to the first cause of action that all the appellants except Bishop O'Dea conspired together to kidnap the daughter and to conceal her whereabouts from the respondent. The evidence tends to show that her whereabouts was concealed from the respondent from the 7th day of February until the 11th day of September following and that she was kept in a school conducted under Catholic auspices at all times after the 17th day of February. During this time the respondent had no word from her daughter except a note written to her by the daughter on the 9th day of February, in which the daughter said:

"I am safe and well. There is no need to worry. I am in good hands and do not regret the step I have taken as I have no intention whatever of returning to Alaska with you. I am sorry it had to come to this but I could not do otherwise. [Signed] Marjory."

The respondent testified that she expended about $3,000 in finding her daughter and in regaining her custody. The appellants contend that the damages awarded on this cause of action, $19,033, are so grossly excessive as to conclusively establish the passion and prejudice of the jury. We readily agree with this view. Moreover, the passion and prejudice of the jury is emphasized by the fact that they returned a verdict against Bishop O'Dea in his private capacity in the face of the evidence and the instructions of the court. If there were no other error in the record, we would direct a new trial on this ground. The damages recoverable are compensatory only. There can be no recovery by way of punishment. If the evidence of the respondent and her daughter is true, the daughter was wrongfully enticed away from her mother. On the other hand, if the evidence of the appellants other than the Bishop is true, they but heeded the wishes of the daughter to protect her from what she conceived to be an immoral environment. The jury gave heed to the testimony

of the mother and daughter. This was their unquestioned privilege, but they can only allow compensatory damages.

Other errors have been examined but require no special mention. For the reasons stated, the judgment is reversed, with directions to enter a judgment in favor of the appellant O'Dea, and to grant a new trial as to the other appellants.

Crow, C. J., Chadwick, Mount, and Parker, JJ., concur.