### HENRY C. MAYNARD ET AL., APPELLANTS,

*v.*

### W. C. HILL ET AL., APPELLEES.

The act of Congress conferring upon the Legislature of the Territory of Oregon the authority to legislate upon all rightful subjects of legislation, empowered it, by a special act, to dissolve the bonds of matrimony existing between a resident of said Territory and his wife, although the wife may not at the time have been within the said Territory.

The marriage relation is a *status*, rather than a contract, and can be annulled by public authority, without impairing vested rights.

Title to land under the Donation Act is only acquired by compliance on the part of the claimant with the requirements of the act.

The residence upon, and cultivation of a Donation Claim, by a man after having been divorced, was that of a single, and not of a married man ; and hence the divorced wife can make no claim for her half of the Donation Claim, as a clause under said Donation Act, because she has in no manner complied with the requirements of the same.

The case of *Maynard* v. *Valentine, infra*, p. 3, *approved.*

WINGARD, Justice, dissenting.

ERROR, to Third Judicial District, holding terms at Seattle.

*C. H. Hanford* and *John Arthur*, for Appellants.

Upon the facts stated in the amended complaint, these appellants are entitled, as heirs of Lydia A. Maynard, to recover the land in controversy, unless the special act of the Territorial Legislature of Oregon, severing the bonds of matrimony between said Lydia A. and David S. Maynard, is valid and effective to deprive her of the benefits she would otherwise be entitled to under the donation law.

The case, therefore, involves two questions, viz :

II. WASH.—**21.**

Had the Legislative Assembly of Oregon power, by a special act, to divorce Lydia A. Maynard from her husband without notice to her, without her consent, without fault on her part, and without judicial inquiry ; she being at the time out of the Territory, and having her domicile in another State ?

Second.   If the Divorce Act is valid, does it affect the rights of the divorced wife, under the Donation Law ?

We maintain that the Divorce Act is not valid for any purpose, and that it does not purport to affect property rights of the parties, and could not in any event take away or abridge the rights of either party to the benefits of the Donation Law.

The Territory of Oregon was not a sovereignty ; its Legislature possessed only *delegated* powers, and must be limited within the scope of the powers granted in the organic act ; the grant of power extends only to *rightful subjects of legislation,* not inconsistent with the Constitution and laws of the United States.   (General Laws of Oregon, p. 24, note 2, and p. 55, Sec. 6, note 1 ; 9 Statutes at Large, 323 ; 1 Kent's Commentaries, 384 ; Story on the Constitution, Secs. 1324–5 ; Cooley on Constitutional Limitations, 28, 85, 174 ; *American Insurance Co.* v. *Canter*, 1 Peters, 511 ; *Clinton* v. *Englebrecht*, 13 Wall. 441 ; *Reynolds* v. *United States,* 8 Otto, 145 ; *National Bank of Brunswick* v. *County of Yankton,* 11 Otto, 129 ; *Griffin* v. *Nichols*, 1 Washington Ty. 374.)   ·

A divorce cannot be *rightfully* granted in any case without cause.   To ascertain and declare the existence of sufficient cause in a particular case is not a legislative but a judicial function, and judicial power is not given to the Legislature, but is vested in the Courts by the organic act ; therefore, the marriage relation of particular individuals is not a *rightful subject of legislation.*   (Story on Conflict of Laws, Secs. 108, 200 : 2 Kent's Commentaries, pp. 76, 105, note C, 106, 118, note 3 ; 1 Kent's Commentaries, 291, 448 ; Schouler on Domestic Relations, 22, 205 ; 1 Bishop on Marriage and Divorce, 5th ed., Secs. 35, 689 ; Cooley on Constitutional Limitations, 6, 87, 90, 91, 95, 174, 175, 188, 391, 109, 113, 114, note 3 ; General Laws of Oregon, 56, Sec. 8 ; 9 Statutes at Large, 323 ; Story on the Constitution, 4th ed., Sec. 1397 and note, Sec. 1592 ; *Clark* v. *Clark*, 10 N. H. 385 ; *Maguire* v. *Maguire*, 7 Dana, Ky. 183 ;

*Cronise* v. *Cronise*, 54 Penn. St. 255; *Carson* v. *Carson*, 40 Miss. 349; *Adams* v. *Palmer*, 51 Me. 480; *Dartmouth College* v. *Woodward*, 4 Wheaton, 629, 695, 696; 1 Wendell's Blackstone, 441, note 20; Macqueen on Parliamentary Divorce, 551; 1 Bishop on M. and D., 5th ed., Sec. 662; *Kilbourn* v. *Thompson*, 13 Otto, 168; Sedgwick on Construction of Constitutional and Statutory Law, 635; Smith's Commentaries, 415, Sec. 272; *State* v. *Fry*, 4 Mo. 120; *Bryson* v. *Campbell*, 12 Mo. 498; *Bryson* v. *Bryson*, 17 Mo. 590; *Chouteau* v. *Magenis*, 28 Mo. 187; *Simonds* v. *Simonds*, 103 Mass. 572; *Holden* v. *James*, 11 Mass. 396; *Lewis* v. *Webb*, 3 Greenl. 326; *Durham* v. *Lewiston*, 4 Greenl. 140; *Bingham* v. *Miller*, 17 Ohio, 445; *Ponder* v. *Graham*, 4 Fla. 23; Bishop on M. and D., Sec. 678, note 3.)

The effect of the Divorce Act is to deprive the parties of personal and property rights without due process of law, and it is therefore in conflict with the fifth amendment of the Constitution of the United States, and, therefore, void. (*Stuart* v. *Palmer*, 74 N. Y. 191; Cooley on Constitutional Limitations, 355; *Murray* v. *Hoboken Land Company*, 18 How. 272; Railroad Tax Cases, 13 Fed. Rep. 746; *Ex parte Wall*, 107 U. S. 265.

Lydia A. Maynard, at the time of the passage of the act, was not within the Territory of Oregon; and being separated from her husband, in fact, without her fault, she was not affected by his change of domicile, but remained as he left her, domiciled in Ohio. Such being the case, the act passed without notice to her, and without her consent, is void as to her. (Cooley on Constitutional Limitations, 128; Story on Conflict of Laws, Secs. 20, 539; 2 Kent's Commentaries, 117, notes; 2 Bishop on M. and D., Sec. 128 a; Freeman on Judgments, Sec. 582; *Maguire* v. *Maguire*, 7 Dana, 181; *Cheever* v. *Wilson*, 9 Wallace, 108; *Pennoyer* v. *Neff*, 5 Otto, 722; *Cheely* v. *Clayton*, 110 United States, 701; *People* v. *Baker*, 76 New York, 78.)

Under the peculiar circumstances of this case, the divorce was a gross fraud upon a blameless woman, and for that reason void. (Bishop on M. and D., Sec. 687.)

The marital rights of persons are rights resting upon a contract in which the parties have pecuniary interests; and the Donation Law is an offer made by the Government of a reward for

valuable services, and upon acceptance of the offer there is a valid and binding contract between the Government and the settler under its provisions. To such a contract the wife of a married settler is also a party; and a law which has the effect to defeat her of her rights under the contract is a law impairing the obligations of a contract; therefore, the Divorce Act is in conflict with Section 10, Article 1, of the Constitution of the United States, and with the Ordinance of 1787, which is expressly incorporated into the organic law of Oregon Territory. (General Laws of Oregon, p. 59; Story on Conflict of Laws, Sec. 108; Story on the Constitution, Sec. 1394; 1 Bouvier's Law Dictionary, 513; *Van Dolf* v. *Otis,* 1 Oregon, 153; *Murray* v. *Murray,* 6 Oregon, 26; *Stark* v. *Starrs,* 6 Wallace, 408; *Vance* v. *Burbank,* 11 Otto, 520.)

Section 6 of the organic law of Oregon Territory expressly forbids the passage by the Territorial Legislature of any law interfering with the primary disposal of the soil; and any law which directly or indirectly has the effect to interfere with the operation of the land laws of Congress is, therefore, void. For this reason, whatever effect may be given to the Divorce Act in other respects, it cannot cut off nor abridge the rights of Lydia A. Maynard or her heirs under the Donation Law. (*Hall* v. *Russell,* 11 Otto, 514; *Crandall* v. *Nevada,* 6 Wallace, 35; *Henderson* v. *Mayor of New York,* 2 Otto, 268; *Tobelman* v. *Packard,* 109 United States, 421; Railroad Tax Cases, 13 Federal Reporter, 731; 18 Central Law Journal, 320.)

The Donation Law is a benevolent statute in favor of a deserving class, and its provisions are to be liberally construed; no new conditions or limitations upon the rights of the donees are to be incorporated into it by construction. The law provides that the quantity of land granted to the settler, if married, or if he shall become married within one year from the first day of December, 1850, shall be double the quantity granted to a single man, and one half to a wife in her own right; the grant to married settlers, therefore, depends upon the existence of the marriage relation at a particular time, viz: the date of the act, or any time thereafter, and within one year from the first day of December, 1850, and does not depend upon the continuance of the marriage relation. (9 Statutes at Large, p. 496; *Stark*

v. *Starr*, 6 Wallace, 402 ; *Silver* v. *Ladd*, 7 Wallace, 225 ; *Meek & Luelling* v. *United States*, 1 Copp's Land Owner, p. 21 ; *Davenport v. Lamb*, 13 Wallace, 418 ; 10 Opinions of Attorney General, 381.)

*Smith & Jacobs*, for Appellees.

Opinion by HOYT, Associate Justice.

The Court below sustained a demurrer to the complaint filed in this action, and rendered judgment in favor of defendants, from which judgment plaintiffs appealed, and have brought the case here for review.

Upon the facts stated in the complaint, plaintiffs were entitled to recover the lands in controversy, unless the special act of the Legislature of the Territory of Oregon declaring the bonds of matrimony between David S. Maynard and Lydia A. Maynard to be dissolved, has had the effect to deprive her of the benefits she would otherwise have been entitled to under the Donation Law of the United States. The case therefore involves two questions, viz: 1st, Was said act of the Legislature valid for any purpose ? and, 2d, If valid, did it affect the rights of the divorced wife under said Donation Law ?

The first inquiry, then, is as to the power of said Legislature to pass a special act of divorce ; for this power being conceded, the fact that it did pass such an act will raise a conclusive presumption that it was rightfully passed, and that just cause therefor was shown to the satisfaction of the said Legislature; and therefore the allegation of the complaint that no such cause in fact existed, is simply a conclusion of law inconsistent with the facts stated in the complaint, and cannot avail plaintiffs. Had such Legislature the power to pass such special act? If it had the power to dissolve the bonds of matrimony at all, it must do so by special act, as from the nature of the legislation it must be special and not general.

The said Legislature is given full power (subject to certain restrictions not pertinent to this discussion) to legislate upon all rightful subjects not inconsistent with the Constitution and laws of the United States. We will first enquire as to whether such a law was upon a rightful subject of legislation, and then as to

its being contrary to any provision of the Constitution or laws
of the United States.

The word rightful, as used in the Organic Act of said Terri-
tory, is, in our opinion, substantially equivalent to the word law-
ful; and Congress, by its use, intended only to prohibit legisla-
tion that was wrongful in a legal sense, and not necessarily all
that might be offensive to the highest standard of moral ethics.

At the time said act was passed, was it lawful for legislative
bodies not restricted by any constitutional provisions to pass
acts of divorce, and were such acts legal and of effect ?

That must be considered as legal and binding which is recog-
nized and enforced by the Courts; and if this be so, then in
1852, when this act was passed, such acts, examined in the light
of all the adjudications upon that subject, must be held to be le-
gal and within the legislative power; and this, too, despite the
fact that the power of government under which such acts had
been passed and said adjudications had, had been by the sover-
eign power distributed into the legislative, executive, and judi-
cial branches.   This proposition is so fully established by the
text writers upon the subject and the cases by them cited, that
a simple reference to some of them will suffice to show it; though
it is clear from what is said by most of them that, upon moral
grounds, they regretted that such had been and was the course
of decision upon the subject.  (See 1st Bishop on Marriage and
Divorce, 664; Cooley Const. Lim., 4th ed., 132; 2d Kent's Com.
98, 105.)

Besides, the existence of this power as a part of the legislative
branch of Government has been so well understood, that nearly
all of the State Constitutions have, by express provision, re-
strained their Legislatures from exercising this power; and while
this fact may tend to show that the exercise of it was not ap-
proved by the moral sentiment of such States, we think that it
likewise tends clearly to show that in the absence of such re-
strictions, its exercise would be lawful, and sustained by the
Courts.                                                          ＼

The passage of the act in question was, then, a rightful sub-
ject of legislation.

If this act was inconsistent with the Constitution or laws of
the United States, it is because the marriage relation is a con-

tract, such as the said Constitution and laws intended to protect from impairment.

And it has been so often decided that such relation is a status rather than a contract, and that the vested rights therein, if any, must yield to the public interest in the regulation and control of such status, and the opinions therein rendered have been so numerous and able, that we content ourselves with a reference to a few of such decisions, from which it will appear that the marriage relation is not a contract, within the meaning of the constitutional restrictions above referred to.    (See *Butler* v. *Penn*, 10 How. 302, 416 ; *Adams* v. *Palmer*, 51 Maine, 480 ; 1 Bishop on Marriage and Divorce, Secs. 2, 19, 667, 669; Cooley Const. Lim. 134; *Brigham* v. *Miller*, 17 Ohio, 445.)

Besides, we think that the fact that Congress nullified certain acts of this nature, and did not, when its attention was thus called to the subject, change the general law as to the territorial legislation in the premises, tends strongly to show that in its opinion such acts were lawful and of full effect, unless set aside by it, under its power of supervision over all of the laws of the Territories.

But it is said that the wife was never domiciled in the said Territory of Oregon, and consequently said act can have no effect upon her or her rights ; but with this claim we cannot agree, for if we admit that under the facts pleaded she was domiciled in the State of Ohio, still as the husband was a resident of said Territory, the Legislature could regulate his status therein; and having released him from the bonds of his marriage, he was, at least while in said Territory, absolved from all its duties, and deprived of all its rights, and from the time he was thus released he occupied the status of a single, and not that of a married man ; and the wife could not come here and assert any right as such wife thereafter.

Did the wife, at the time said act was passed, have such a vested right in her half of said Donation Claim as would continue to her, notwithstanding its passage ?  We think not; as it is now the settled law that no title passes to such donation claimants, until the settlement and cultivation required by law have been fully completed.    (See *Hall* v. *Russell*, 101 U. S. 503.)

Her rights, therefore, were simply contingent; liable to be

defeated by the acts of the husband, and in no sense so vested as to be protected from legislative interference.

Besides, the facts pleaded show that as to her half of said claim there never was any compliance with the requirements of said Donation Law; as after said divorce the status of her former husband was that of a single and not of a married man, his residence and cultivation could only serve to complete title to his half of said claim; and as there never was any other settlement or cultivation, it follows that her half has never been earned, but remained the property of the United States, and was properly disposed of as such.

For a more elaborate discussion of the questions involved in this case, we refer to and approve the opinion of this Court by its Chief Justice, in the case of *Maynard* v. *Valentine*, 2 Wash. Territory, 3.

Let a decree be entered here, as in the Court below, dismissing the complaint, and for costs in favor of the defendants.

I concur: GEORGE TURNER, Associate Justice.

It does not appear, except inferentially, that I dissented from the decision in the case of *Maynard* v. *Valentine*, 1 Washington Territory, 3; but I did dissent therefrom, and I dissent from the majority opinion in this case.