[No. 43188. En Banc. June 19, 1975.]

WASHINGTON STATEWIDE ORGANIZATION OF STEPPARENTS *et al*, *Appellants*, v. SIDNEY E. SMITH, *as Secretary of the Department of Social and Health Services et al, Respondents.*

*Linda L. Dawson, Patrick H. McIntyre, Peter Francis,* and *Francis & McFarlane,* for appellants.

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for respondents.

ROSELLINI, J.—In this class action, the appellants ask the court to hold that the provisions of RCW 26.16.205 and

26.20.030[1] do not apply to those members of the class who were married prior to 1969 when these statutes were amended to impose a duty of support upon stepparents; and a further holding that in any event the statutes are unconstitutional because public assistance regulations promulgated pursuant to them deny equal protection of the laws to the members of the class.[2] The trial court, after hearing and entering findings of fact and conclusions of law, dismissed the action with prejudice. We agreed to hear the appeal.

RCW 26.16.205 provides:

> The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately: *Provided*, That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife.

RCW 26.20.030 provides, *inter alia*, that every person who

> (b) [w]ilfully omits, without lawful excuse, to furnish necessary food, clothing, shelter, or medical attendance for his or her child or stepchild or children or stepchildren or ward or wards: *Provided*, That with regard to stepchildren the obligation shall cease upon termination of the relationship of husband and wife; . . .

shall be guilty of a felony if there is a child under 16 years of age, or of a misdemeanor if there is no child under 16.

The duty of support was imposed upon stepparents in Laws of 1969, 1st Ex. Sess., ch. 207, §§ 1-2. The appellants

---

[1]This statute has been construed by Division One, Panel 1, and Division Two of the Court of Appeals. *See State v. Gillaspie*, 8 Wn. App. 560, 507 P.2d 1223 (1973), and *State v. Finister*, 5 Wn. App. 44, 486 P.2d 114 (1971).

[2]It appears that all of the stepchildren involved in this action are living in the home of their stepparents. The question whether the statutes apply to stepchildren not residing with stepparents is not raised. There is also no question in the case regarding the relative responsibilities of natural and stepparents. Upon this point, *see State v. Finister*, 5 Wn. App. 44, 486 P.2d 114 (1971).

who were married prior to 1969 contend that when they entered into the relationship, they contracted to assume only those duties and obligations which were imposed by law at that time; that there was no statutory or common-law duty of support at that time,[3] and that these statutes impair the obligation of their contract, in violation of U.S. Const. art. 1, § 10. They cite a number of New York cases which have held that, in that state, marriage is a contract, the obligations of which may not be changed after the contract is entered into. These include *Kane v. Necci*, 245 App. Div. 1, 280 N.Y.S. 489 (1935), *rev'd on other grounds*, 269 N.Y. 13, 198 N.E. 613 (1935); *Anonymous v. Anonymous*, 22 N.Y.S.2d 432 (Dom. Rel. Ct. 1940); *Cavanaugh v. Valentine*, 181 Misc. 48, 41 N.Y.S.2d 896 (Sup. Ct. 1943).

The New York cases, we find, are out of harmony with the general rule and with this court's only pronouncement upon the subject which the research of counsel and this court has revealed. In *Maynard v. Hill*, 2 Wash. Terr. 321, 327, 5 P. 717 (1884), *aff'd*, 125 U.S. 190, 31 L. Ed. 654, 8

---

[3]In *Taylor v. Taylor*, 58 Wn.2d 510, 364 P.2d 444 (1961), this court held that a stepfather who stood in loco parentis to his wife's illegitimate son, could abandon that relationship when the parties were divorced and could not be compelled to contribute to the child's support. In *State v. Brown*, 52 Wn.2d 92, 323 P.2d 239 (1958), a prosecution for nonsupport, it was held that a natural father's failure to support his child was not excused by a showing that the child was being supported by his stepfather, since the stepfather had no legal duty to support the child and the evidence did not show that he had undertaken or consented to relieve the natural father of his statutory duty. The same result had been reached in another nonsupport case, *McGill v. McGill*, 67 Wash. 303, 121 P. 469 (1912).

That case, however, was distinguished in *White v. McDowell*, 74 Wash. 44, 47, 132 P. 734 (1913), where this court refused to modify a decree of divorce to compel the natural father to support his child, it being shown that the stepfather was able and willing to support the child. This court said:

> We are satisfied that there is a duty upon a stepfather to support the minor children of his wife by a former husband, and that this duty is something more than mere charity.

And in *Magnuson v. O'Dea*, 75 Wash. 574, 135 P. 640 (1913), it was held that the stepfather was a necessary party in action for kidnapping a child, where he had received the child into his home and supported him for several years, since the stepfather had a duty to support the

S. Ct. 723 (1888), it was contended as it is here that marriage is a contract, the obligations of which are protected by the federal constitution. This court said:

And it has been so often decided that such relation is a status rather than a contract, and that the vested rights therein, if any, must yield to the public interest in the regulation and control of such status, and the opinions therein rendered have been so numerous and able, that we content ourselves with a reference to a few of such decisions, from which it will appear that the marriage relation is not a contract, within the meaning of the constitutional restrictions above referred to.

While we have not had occasion to cite the case again upon the point, we have cited it upon a related point in *Loomis v. Loomis*, 47 Wn.2d 468, 288 P.2d 235 (1955); and *Tupper v. Tupper*, 63 Wn.2d 585, 388 P.2d 225 (1964). In the latter case we again recognized that marriage is a status.

*Maynard v. Hill, supra,* will be found cited as a leading case in 52 Am. Jur. 2d *Marriage* § 6 (1970), and in a

---

child. It was said that when a stepfather assumes the duties of a parent, the corresponding benefits follow and the rights of the mother and stepfather in respect to the child are then equal before the law.

There are other areas in which the rights of stepchildren have been recognized. RCW 11.04.095 provides for inheritance from a stepparent in order to avoid escheat of property to the state. The industrial insurance laws afford benefit rights to stepchildren and stepparents. *See* RCW 51.08.030,-.050 and 51.32.005. This court, in *In re Estate of Bordeaux*, 37 Wn.2d 561, 594, 225 P.2d 433 (1950), held that, for inheritance tax purposes, the stepchildren belong in the same class as natural children. We said:

The rights of stepchildren have been but slowly established through the years, and always in direct opposition to the common law, "whose fundamental pronouncement is that the mere relationship of stepparent and stepchild confers no rights and imposes no duties." 4 Vernier, American Family Laws, 485, § 268. But the modern tendency has been, and rightly so, to assimilate the stepchild to the natural child. See Note, 52 Harv. L. Rev. 515. Where the legislature has passed a statute which, on its face, appears designed to aid in accomplishing that end, we should not restrict it by resort to abstruse and little-known common-law rules, particularly when such rules, as in this case, are of the most doubtful validity.

*See* B. Berkowitz, *Legal Incidents of Today's "Step" Relationship: Cinderella Revisited,* 4 Family L.Q. 209 (1970).

number of treatises and texts. *See* J. Madden, *The Law of Persons and Domestic Relations*, ch. 1, §§ 1-3, at 4 (1931); F. Battershall, *The Law of Domestic Relations in the State of New York*, ch. 1, at 3 (1910); F. Keezer, *The Laws of Marriage and Divorce*, ch. 1, § 1, at 8 (J. Morland 3d ed. 1946); H. Clark, *The Law of Domestic Relations in the United States*, § 2.2 (1968). *See also* R. Young, *An Evaluation of Washington Marriage Laws*, 12 Wash. L. Rev. 112, at 117 (1937). All of these writers agree that the prevailing rule is that while the marriage relation is entered into by civil contract, the rights, duties and obligations incident to the relationship are governed by statute. The applicable principles are well stated in Madden's treatise, at pages 4 and 5:

> The following quotations from legal writers and judicial opinions illustrate the universal opinion that the marriage relation is a status, and that the act of contracting marriage results in a change of status.
>
> "Marriage has been well said to be something more than a contract, either religious or civil; to be an institution." Marriage is a state or relation, depending for its existence upon the fact of parties competent to contract the relation, and their legal, voluntary, present consent to do so, with such formalities as the law of the place requires for its valid solemnization." When the contracting parties have entered into the married state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest, not upon their agreement, but upon the general law of the state, statutory or common, which defines and prescribes those rights, duties, and obligations. They are of law, not of contract. It was a contract that the relation should be established, but, being established, the power of the parties, as to its extent or duration, is at an end. Their rights under it are determined by the will of the sovereign, as evidenced by the law. They can neither be modified nor changed by any agreement of parties." "Marriage is not a contract, but one of the domestic relations. In strictness, though formed by contract, it signifies the relation of husband and wife, deriving both its rights and duties from a source higher than any contract of which the parties are capable, and, as to these, uncontrollable by

any contract which they can make. When formed, this relation is no more a contract than 'fatherhood' or 'sonship' is a contract."

(Footnotes omitted.)

RCW 26.04.010 declares that marriage is "a civil contract." It is apparent that the purpose of this statute was to make it clear that marriage is governed by civil law rather than by ecclesiastical law. *See* the authorities cited above, which discuss the purposes of such statutes.

The legislature, in the remainder of RCW 26.04-.21, proceeds to regulate the relationship of marriage with respect to the rights and duties of the parties. Those regulatory measures have been changed from time to time. For example, the provisions with regard to dissolution were changed in Laws of 1973, 1st Ex. Sess., ch. 157. The laws with respect to community property were changed in Laws of 1972, 1st Ex. Sess., ch. 108, §§ 3-6. The laws with respect to antenuptial and separate debts were changed in Laws of 1969, 1st Ex. Sess., ch. 121, § 1.

If the appellants' theory were correct, none of these new provisions would apply to marriages entered into before their enactment. It is immediately apparent why the courts in most jurisdictions have consistently held that, while marriage is entered into by contract, the legal duties and rights of the parties with respect to the marriage relationship are determined by statute and may be altered by the legislature after the marriage is contracted. We adhere to that view.

The appellants point out that the statutes contain no language evidencing an intent that they should have retroactive effect. We agree. The statutes apply prospectively only. They impose no penalties for past omissions. They do, however, impose a duty upon stepparents from and after their effective date.

Regulations of the Department of Social and Health Services, since the enactment of RCW 26.16.205 and 26.20.030 (b), have treated children who live with a stepparent the same as children who live with both natural

parents.[4] The appellants contend that they are denied equal protection of the laws because the regulations do not apply with like force to homes where the natural parent is living with, but not married to a member of the opposite sex.

 The appellants concede the applicable rule to be that a legislative classification will be sustained if there is in fact a reasonable basis for the distinction. *Dandridge v. Williams*, 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970), *rehearing denied*, 398 U.S. 914, 26 L. Ed. 2d 80, 90 S. Ct. 1684 (1970). In that case the United States Supreme Court upheld a state welfare program which placed a ceiling upon the amount of aid which any one family could receive per month. The result of this policy was that children in large families received less per capita than children in small families. The court found a reasonable basis for the discrimination in the state's interest in encouraging employment and in avoiding discrimination between welfare families and families of the working poor.

 The department could reasonably have considered the fact that where a mother has remarried, her husband has made a serious commitment to her and it can therefore be assumed that his earnings will be available to meet the needs of the children, as well as the needs of his wife, upon a fairly stable basis, whereas such a presumption would not be justified where the mother is maintaining a meretricious relationship. The department also could reasonably assume that a man who is willing to marry the mother of young children is willing to take an interest in them and act as a substitute father to them, an assumption not ordinarily justified where there is no marriage relationship. Also, the difficulty of administering the kind of regulation proposed by the appellants may well have been a factor which the

[4]WAC 388-24-135:

"To be eligible for AFDC-E an applicant shall be a child

"(1) Who is deprived of parental care and support because of the unemployment of his father or stepfather.

"(a) A father or stepfather is considered to be unemployed who

"(i) is employed less than 100 hours a month, . . ."

department had in mind. Such considerations afford a reasonable basis for the classification made by the department. That classification also was in harmony with the federal Social Security Act. *See Lewis v. Martin,* 397 U.S. 552, 25 L. Ed. 2d 561, 90 S. Ct. 1282 (1970).

The appellants contend that children of a divorced mother who keeps them in a home where there is an employed man living without benefit of marriage certificate may receive more support from that man than children having a stepparent living in the home, and that this will result in a disadvantage to such children. This possibility may be conceded, but it does not mean that the provisions in question contravene the equal protection clause in the United States Constitution, or article 1, section 12, of the Washington State Constitution. As the court said in *Dandridge v. Williams, supra,* the equal protection clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all.

The appellants urge that the statutes and the regulations made pursuant thereto will discourage men from marrying mothers of young children, that they will tend to be destructive of the family institution, and are therefore contrary to public policy. Being patently a policy argument, this contention is relevant, not to the constitutionality but to the wisdom of the statutes, and should be addressed to the legislature.

The Superior Court did not err in dismissing the action. The judgment is affirmed.

STAFFORD, C.J., and FINLEY, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

UTTER, J. (concurring)—Although I agree with the majority's conclusion, I reach it through a slightly different analysis of the equal protection issues. I do not believe that the "minimum rationality" standard of review is unambigu-

ously conceded by appellants or is properly applicable in the context of this case.

The interests of children in receiving statutorily authorized welfare payments is literally, if not legally, fundamental. Recent equal protection jurisprudence has recognized that a higher level of scrutiny should be given to classifications affecting such interests than is appropriate in the review of business or economic regulation: they should be upheld if, but only if, they bear a " 'fair and substantial relation to the object of the legislation.' " *Kahn v. Shevin*, 416 U.S. 351, 355, 40 L. Ed. 2d 189, 94 S. Ct. 1734 (1974); *Dandridge v. Williams*, 397 U.S. 471, 520-22, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970) (Marshall, J., dissenting); *see generally* Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv. L. Rev. 1 (1972). Although the Supreme Court has not explicitly declared that this newly-developed equal protection analysis is triggered by discriminatory classifications in social welfare legislation, it has indicated that the absolute "minimum rationality" test, which, in effect, "suspend[s] the operation of the Equal Protection Clause," is no longer applicable in this area. *Hagans v. Lavine*, 415 U.S. 528, 539, 39 L. Ed. 2d 577, 94 S. Ct. 1372 (1974); cf. *Jimenez v. Weinberger*, 417 U.S. 628, 41 L. Ed. 2d 363, 94 S. Ct. 2496 (1974). And even if minimal scrutiny were permitted under federal law, I would require more under article 1, section 12 of our state constitution, the scope of which is not delimited by restrictive interpretations of the similar provisions of the federal constitution's Fourteenth Amendment.

I find, however, that the laws appellants challenge are justifiable even under this heightened standard of review. The only statutory discrimination appellants seriously attack is that between children with stepparents and children in households where a person lives with, but is not married to, their natural parents. But this classification conforms to, indeed results from, those provisions of RCW Title 26 which place an enforceable legal obligation on stepparents

to support their stepchildren. That duty, and the concomitant rights it creates, constitutes a real, not theoretical, difference between children with stepparents and those in homes with unmarried adults. In light of that difference, the statutory distinction appellants challenge bears a fair, substantial, *actual* relation to the permissible purposes of the welfare laws: distributing limited public funds to children most in need. It therefore survives even the stricter scrutiny I would apply under the equal protection clause of the Fourteenth Amendment and the prohibition of special privileges and immunities in Const. art. 1, § 12.

Essentially, what the system created by the statutes and regulations attacked here does is treat stepparents like natural parents. Appellants argue that stepparents and their stepchildren are treated more harshly than natural parents and their children by these laws, urging that stepparents are likely to have outside support obligations from former marriages which render the receipts of 100 hours of work per month (the cut-off level for AFDC-E eligibility under WAC 388-24-135) inadequate to support their stepchildren. But there is no reason to believe that natural parents are not just as likely as stepparents to have support obligations arising out of previous marriages. The possibility of outside support obligations is taken into account in the computation of need under WAC 388-28-560(1), although it is not a factor in the determination of eligibility. Whether the exclusion of this factor is wise or fair is not an issue before this court on this appeal; the sole question raised by appellants is answered by the fact that, right or wrong, it operates equally with respect to stepparents and natural parents, and the children thereof.

Indeed, if anything, two aspects of the statutory scheme would seem to favor stepparents and their children over natural parents with a number of dependents. The obligation to support children lies jointly and severally on stepparents and absent natural parents (*State v. Finister*, 5 Wn. App. 44, 48, 486 P.2d 114 (1971)), giving children with stepparents two possible sources of support, while children

without stepparents have only one. In addition, the inability to make support payments which may result from statutory obligations to stepchildren may relieve the stepparent from the legal duty to support his or her natural children. *State v. Godines*, 9 Wn. App. 55, 57-58, 510 P.2d 835 (1973); *State v. Finister, supra* at 47; 59 Am. Jur. 2d *Parent and Child* § 54 (1971). This, though hardly a desirable result, could entitle the natural children to AFDC payments under the "absent parent" sections of the law, thus accomplishing the result sought by appellants, but as to different children. No such recourse is available to an underemployed parent living with, and obligated to, a large number of his or her own offspring.

For these reasons, I find that, although discrimination in this area requires something more than the minimal justification demanded for business and economic regulation, the statutory differentiations challenged by appellants survive constitutional scrutiny. I therefore concur in the decision of the majority.

HOROWITZ, J., concurs with UTTER, J.

Petition for rehearing denied August 12, 1975.