[No. 16279-2-II.    Division Two.    March 30, 1995.]

*In the Matter of the Marriage of* J.T., *Appellant, and*
M.J., *Respondent.*

*James Caraher* and *James Caraher & Assocs.,* for appellant.

*William Phillips,* for respondent.

UTTER, J.* — This is an appeal from a trial court order granting summary judgment, dismissing the tort action of negligent infliction of emotional distress by one spouse against the other occasioned by the extramarital affair of one of the spouses. We affirm the trial court's dismissal of the Appellant's cause of action on these facts.

J.T. (the wife) and M.J. (the husband) were married in 1969, at a religious ceremony in which J.T. asserts they exchanged vows to love the other exclusively, and to honor and protect each other. The parties were separated, and in May 1988 M.J. moved from the family home. Among the circumstances leading to the separation was M.J.'s sexual relationship with another woman. The parties separated, then attempted a brief reconciliation in the summer of 1988.

J.T. asserts that in 1988 she became aware that Human Immune Deficiency Virus (HIV) can be communicated through heterosexual contact. She contends that when she learned this, she became severely concerned that her husband might have communicated HIV to her. She sought counseling and medical assistance. After several tests, she was assured that as of October 1991 she did not have HIV or any sexually transmitted disease.

The parties' dissolution was entered on March 18, 1990. J.T. filed her complaint in 1991 alleging: (1) assault; (2) negligent infliction of emotional and psychological injury, including fear of contracting sexually transmitted diseases; (3) deceit, fraud and misrepresentation; and (4) intentional, reckless, or negligent violation of the terms of the marriage contract.

M.J. moved for summary judgment dismissal of all claims, which the trial court granted on May 11, 1992. J.T. unsuccessfully sought reconsideration. J.T. seeks review only of that portion of the order dismissing her negligence claim based on the fear she would contract a sexually transmitted disease.

---

*Justice Robert F. Utter is serving as a judge pro tempore of the Court of Appeals, pursuant to CAR 21(c).

■■ J.T.'s cause of action is not barred by the common law rule of interspousal immunity, as that rule was abolished in *Freehe v. Freehe*, 81 Wn.2d 183, 192, 500 P.2d 771 (1972), *overruled on other grounds by In re Marriage of Brown*, 100 Wn.2d 729, 675 P.2d 1207 (1984). Nor is this action barred by J.T.'s failure to raise the claim in the dissolution proceeding. A party is not required under Washington law to combine his or her tort action with the dissolution action. *Plankel v. Plankel*, 68 Wn. App. 89, 95, 841 P.2d 1309 (1992). Accordingly, the issue is not whether the Appellant may maintain an action against her former husband, but whether there is a cause of action under Washington law on the facts she alleges. More specifically, the narrow issue presented is whether Washington law recognizes a duty to disclose extramarital sexual relations to one's spouse, the breach of which is actionable in negligence.

■■ The threshold question in a negligent tort cause of action is whether a duty exists in the first instance. Absent a duty, there can be no breach of that duty. *See Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Whether a duty exists is a question of law. *Hansen*, 118 Wn.2d at 479 (citing *Pedroza*, 101 Wn.2d at 228).

J.T. grounds her negligence action on the assumption that the marriage vows taken by her husband created a legal duty of fidelity, the breach of which is actionable in tort. That notion is erroneous.

■■ As M.J. correctly points out, although often referred to as a contract, marriage is more properly characterized as a legal status. *Washington Statewide Org. of Stepparents v. Smith*, 85 Wn.2d 564, 567-69, 536 P.2d 1202, 75 A.L.R.3d 1119 (1975). The legal status of marriage and the legal rights, duties and obligations incident to it are governed by statute, not by the representations of the parties:

> When the contracting parties have entered into the married state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest, not upon their agreement, but upon the general law of the

state, statutory or common, which defines and prescribes those rights, duties, and obligations. They are of law, not of contract.

Joseph W. Madden, *Persons and Domestic Relations*, ch. 1, §§ 1-3, at 4-5 (1931), *cited in Stepparents*, 85 Wn.2d at 568.

█ J.T. argues in the alternative that her cause of action may be "based on one person assuming the duty" to avoid injuring another. That theory is unavailing in this case as well, because it too is premised on the notion that M.J.'s wedding vows established a duty, the breach of which is actionable in negligence. See Br. of Appellant, at 15 ("A duty to use reasonable care to avoid injury to another can be voluntarily undertaken by affirmative conduct. . . . [M.J.] verbally agreed in his wedding vows to undertake this duty."). As we have just seen, the marriage vows taken by M.J. established no such duty.

J.T. also maintains that the "special relationship" between husband and wife gave rise to a tort duty, the breach of which is actionable in negligence. The case upon which the Appellant relies, however, *Bartlett v. Hantover*, 9 Wn. App. 614, 513 P.2d 844, *rev'd*, 84 Wn.2d 426, 526 P.2d 1217 (1974), is inapposite. That case concerned whether an employer had been negligent in failing to protect an employee against the foreseeable acts of third parties. What is significant about *Bartlett* is that the issues presented there were decided within the context of a *recognized* tort duty, namely, the duty of an employer to provide a safe work environment. *See Bartlett*, 9 Wn. App. at 620. In contrast here, J.T. has cited no authority to support a duty on these facts.

The other cases upon which Appellant relies pertaining to recovery for emotional distress are also inapposite because they are premised on the violation of a duty recognized in the law. *See Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 804 P.2d 659 (duty of manufacturer of asbestos-containing products to use reasonable care), *review denied*, 117 Wn.2d 1006 (1991); *Hunsley v. Giard*, 87 Wn.2d 424, 436, 553 P.2d 1096 (1976) (driver's duty to avoid driving car into house of another); *Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 809, 701 P.2d 518 (1985) (duty to dispose of hazardous waste in

manner prescribed by statute); *McRae v. Bolstad*, 32 Wn. App. 173, 176-77, 646 P.2d 771 (1982) (real estate broker and seller's duty to disclose material facts not reasonably discoverable by the buyer), *aff'd*, 101 Wn.2d 161, 676 P.2d 496 (1984).

Finally, J.T.'s citation to cases concerning the transmission of HIV do not support her position. In one, the court held that plaintiff visitor to a hospital could not recover damages based on her fear of contracting HIV from pricking her fingers on used needles, absent proof she was actually exposed to the HIV virus. *Carroll v. Sisters of St. Francis Health Servs., Inc.*, 868 S.W.2d 585 (Tenn. 1993).

In the other, a case in which appellants prevailed in their suit to recover damages for fear of acquiring HIV, the court based its holding on the existence of a recognized duty, which the defendant breached. *Faya v. Almaraz*, 329 Md. 435, 447-48, 620 A.2d 327, 333 (1993) (physician had a duty of care which encompassed disclosing that he was HIV positive, and that such status posed a risk, however minimal, of transmission of the virus during surgery. Accordingly, patients could recover for their fear of acquiring HIV for the period between which they learned the physician had HIV and the time they received their HIV-negative results).

In sum, we hold Washington law does not recognize a legal duty to disclose extramarital sexual relations to one's spouse. We therefore affirm the trial court's dismissal of this suit.

MORGAN and BRIDGEWATER, JJ., concur.

Reconsideration denied May 23, 1995.